UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

MEF I, LP,

                       Plaintiff,

       -against-

SHIFTPIXY, Inc.,

                       Defendant.

------------------------------------------------------------------x

Case No.: 19-cv-8019

Civil Action

**COMPLAINT**

       Plaintiff, complaining of defendant, by Paul A. Rachmuth, Esq., its undersigned attorney, states and alleges as follows:

## JURISDICTION

1.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

## VENUE

2.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district and is the exclusive judicial district in which defendant, by written agreement, has consented to venue.

## PARTIES TO THE ACTION

3.     Plaintiff, MEF I, LP, is a limited partnership, organized and existing under the laws of the State of Delaware, presently in good standing and authorized to conduct business in

the State of New York, with its principal place of business located at 40 Wall Street, City, County and State of New York.

4.     Defendant, SHIFTPIXY, INC., is a corporation, organized and existing under the laws of the State of Wyoming, with its principal place of business located at 1 Venture Suite 500, Irvine, California.

## NATURE OF THE ACTION

5.     By way of this action, plaintiff seeks to collect amounts due pursuant to the terms of two separate 8% Senior Secured Convertible Notes executed and delivered to it by defendant, one dated June 4, 2018, in the principal amount of $2,500,000.00, the other dated December 20, 2018, in the principal amount of $222,222.22, by reason of defendant's default thereunder. Plaintiff also seeks to enforce the terms of a Security Agreement, dated June 4, 2018, pursuant to which plaintiff was granted the right, among others, to take possession of the Collateral, as defined therein, upon the occurrence of any Event of Default, and take certain actions with respect thereto.

## FACTS COMMON TO ALL COUNTS

6.     On June 4, 2018, plaintiff and defendant entered into a written Securities Purchase Agreement whereby plaintiff agreed, subject to the terms and conditions thereof, to subscribe for a warrant for 251,004 shares of defendant's stock for a subscription amount of $2,250,000.00.

7.     Annexed hereto as Exhibit "A" is a true copy of the Securities Purchase Agreement, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

8.      On June 4, 2018, for good and valuable consideration, and pursuant to the terms of the Securities Purchase Agreement, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $2,500,000 (as amended March 11, 2019, the "June Note"), which note was due and payable by September 4, 2019.

9.      Annexed hereto as Exhibit "B" is a true copy of the June Note, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

10.      On June 4, 2018, defendant executed and delivered to plaintiff a Security Agreement pursuant to the terms of the June Note granting plaintiff a security interest in and certain rights with respect to the Collateral as defined therein, including, but not limited to, collect and take possession  of the Collateral upon the occurrence of an Event Default as more fully described in said agreement, the Securities Purchase Agreement and the June Note (collectively, the "Collateral").

11.      Annexed hereto as Exhibit "C" is a true copy of the Security Agreement, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

12.       On June 11, 2018, UCC Financing Statements (the "UCC Financing Statements") were filed in the States of California and Wyoming against the defendant and in favor of the plaintiff, perfecting the plaintiff's rights in the Collateral.

13.      Annexed hereto as Exhibit "D" are true copies of the UCC Financing Statements, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

14.    On June 4, 2018, pursuant to the terms of the Securities Purchase Agreement and the June Note, and in furtherance thereof, defendant executed and delivered to plaintiff a Registration Rights Agreement which provided, among other things, for defendant to file a registration statement to cover the securities as defined therein for which plaintiff subscribed under the Securities Purchase Agreement within 30 days of June 4, 2018, and have the registration statement be declared effective within 90 days of June 4, 2018, or 120 days of June 4, 2018 in the case of a full review.

15.    Annexed hereto as Exhibit "E" is a true copy of the Registration Rights Agreement, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

16.    On June 4, 2018, J. Stephen Holmes, a shareholder of the defendant, executed a securities lockup agreement (the "Lockup Agreement"), pursuant to which he agreed not to sell any shares of the defendant for so long as any amount of the June Note was outstanding.

17.    Annexed hereto as Exhibit "F" is a true copy of the Lockup Agreement, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

18.    Thereafter a dispute arose between the parties concerning defendant's performance of its obligations under the parties' various agreements, and more particularly plaintiff's claim that defendant failed to fulfill its obligations under the parties' Registration Rights Agreement.

19.    On December 20, 2018, the parties entered into a Limited Settlement Agreement resolving their then-existing dispute, pursuant to which defendant agreed, among other things, to execute and deliver to plaintiff a new note in the principal amount of $222,222.22.

20.    On December 20, 2018, for good and valuable consideration, and pursuant to the terms of the Limited Settlement Agreement, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $222,222.22 (the "December Note"), which note was due and payable by December 31, 2019.

21.    Annexed hereto as Exhibit "G" is a true copy of the December Note, the terms and contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

22.    Pursuant to Section 2(a) of the June Note, defendant is obligated to pay interest to plaintiff on the aggregate unconverted and then outstanding principal amount of the Note at the rate of 8% per annum, payable monthly, beginning on the first date after the Original Issue Date, on each Conversion Date (as to that principal amount then being converted), on each Optional Redemption Date (as to that principal amount then being redeemed), on each Mandatory Redemption Date (as to that principal amount then being redeemed) and on the Maturity Date, the initial twelve months' interest amount being guaranteed and the remaining unpaid portion thereof being accelerated and payable in connection with any conversion of said Note.

23.    Pursuant to Section 2(d) of the June Note, all overdue accrued and unpaid interest would entail a late fee at an interest rate equal to 18% per annum.

24.    Pursuant to Section 2(e) of the June Note, commencing with the first day of the month after the date that is the earlier of the date a Registration Statement covering the shares

underlying the Note has been declared effective by the Securities Exchange Commission or one hundred and eighty days after the Original Issue Date, and continuing on the first day of each of the following successive months thereafter until the Maturity Date, defendant was obligated to redeem said Note pursuant to Schedule 2(e) of said Note.

25.     Pursuant to Section 2(a) of the December Note, defendant was obligated to pay interest to plaintiff on the aggregate unconverted and then outstanding principal amount of the Note at the rate of 8% per annum, payable monthly, beginning on the first date after the Original Issue Date, on each Conversion Date (as to that principal amount then being converted), on each Optional Redemption Date (as to that principal amount then being redeemed), on each Mandatory Redemption Date (as to that principal amount then being redeemed) and on the Maturity Date, the initial twelve months' interest amount being guaranteed and the remaining unpaid portion thereof being accelerated and payable in connection with any conversion of said Note.

26.     Pursuant to Section 2(d) of the December Note, all overdue accrued and unpaid interest would entail a late fee at an interest rate equal to 18% per annum.

27.     Pursuant to Section 2(e) of the December Note, commencing with the first day of the month after the date that is the earlier of the date that a Registration Statement covering the shares underlying the Note has been declared effective by the Securities Exchange Commission or one hundred and eighty days after the Original Issue Date, and continuing on the first day of each of the following successive months thereafter until the Maturity Date, defendant was obligated to redeem said Note pursuant to Schedule 2(e) of said Note.

28.    Sections 7(d) of the June and December Notes contain several negative covenants which prohibit  defendant from taking certain acts, including but not limited to, a prohibition against the repayment or repurchase, or offer to repay, repurchase or otherwise acquire more than a *de minimis* number of shares of the defendant's common stock.

29.    Sections 8 of the June and December Notes list acts or occurrences which constitute a default under the Notes ("Events of Default"), which included, among other things:

(a)    The failure to make payment of the principal interest, liquidated damages and other amounts owing to plaintiff on any Note if not cured within 3 trading days after notice;

(b)    The failure of the defendant to observe or perform any covenant, obligation or agreement contained in the Notes if not cured within 10 trading days after the defendant has become or should have become aware of such failure; and

(c)    If any Person breaches any agreement delivered pursuant to the Purchase Agreement.

30.    Pursuant to Section 8(b) of the June Note and December Note, if an Event of Default occurs, the outstanding principal amount of said Notes, plus accrued but unpaid interest, liquidated damages and other amounts owing respect thereof shall become, at plaintiff's election, immediately due and payable in cash at the Mandatory Default Amount as defined in each of said Notes.

31.    Defendant failed to make the payments it was obligated to make to plaintiff under the June Note when due on June 10, 2019 in the total amount of $643,784.38.

32.     Defendant failed to make the payments it was obligated to make to plaintiff under the December Note when due on June 10, 2019 in the total amount of $313,974.08.

33.     On June 10, 2019, plaintiff served defendant with a Notice of Default pursuant to Section 8(a)(i) of the June Note and December Note, demanding payment of the mandatory default amount of $928,124.78.

34.     Annexed hereto as <u>Exhibit "H"</u> is a true copy of the Notice of Default, the contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

35.     Defendant failed, refused and neglected to cure its default within the time allowed therefor under the parties' respective agreements and no extension, waiver or modification thereof has been granted or consented or agreed to by plaintiff.

36.     On July 7, 2019, the defendant, by way of a Form 8-K filed with the Securities and Exchange Commission on July 12, 2019, announced the repurchase of up to 10,000,000 of its shares (the "Share Repurchase").

37.     Annexed hereto as <u>Exhibit "I"</u> is a true copy of the defendant's Form 8-K filed on July 12, 2019 with the Securities and Exchange Commission, the contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

38.     The Share Repurchase is in direct violation of the negative covenants contained in Section 7(d) of the June and December Notes and constitutes an Event of Default thereunder pursuant to Section 8(a)(ii) of the June and December Notes.

39.     On July 17, 2019, J. Stephen Holmes sold 558,132 shares of the defendant's common stock as announced by way of Form 4 filed by defendant on July 19, 2019 with the Securities and Exchange Commission (the "Holmes Stock Sale").

40.     Annexed hereto as Exhibit "J" is a true copy of the defendant's Form 4 filed on July 19, 2019 with the Securities and Exchange Commission, the contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

41.     The Holmes Stock Sale is a breach of the Holmes Lockup Agreement and constitutes defaults of the June and December Notes pursuant to Section 8(a)(ii)) of said Notes.

## COUNT ONE

42.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "41" herein-above in their entirety with the same full force and effect as if more fully set forth herein at length.

43.     Defendant's defaults under the June Note, including its failure, refusal and neglect to make payment of the mandatory default amount, the Share Repurchase and the Holmes Stock Sale constitute breaches of the terms of said Note and Defaults thereunder thereby entitling plaintiff to accelerate the full amount presently due and owing under said Note in the amount of $1,352,179.69, together with interest at the default rate of 18% per annum from June 10, 2019.

44.     By reason of the foregoing, plaintiff is entitled to judgment against defendant under the June Note in the total amount of $1,352,179.69, together with interest at the default rate of 18% per annum from June 10, 2019, no part of which has been paid.

## COUNT TWO

45.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "43" herein-above in their entirety with the same full force and effect as if more fully set forth herein at length.

46.     Defendant's defaults under the December Note, including its failure, refusal and neglect to make payment of the mandatory default amount, the Share Repurchase and the Holmes Stock Sale constitute breaches of the terms of said Note and Defaults thereunder thereby entitling plaintiff to accelerate the full amount presently due and owing under said Note in the amount of $659,458.95, together with interest at the default rate of 18% per annum from June 10, 2019.

47.     By reason of the foregoing, plaintiff is entitled to judgment against defendant under the December Note in the total amount of $659,458.95, together with interest at the default rate of 18% per annum from June 10, 2019, no part of which has been paid.

## COUNT THREE

48.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "47" herein-above in their entirety with the same full force and effect as if more fully set forth herein at length.

49.     Section 7 of each of the Security Agreement provides that upon the occurrence of any Event of default and any time thereafter, defendant shall, upon receipt of any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, whether payable pursuant to the Notes or otherwise, or of any check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum, hold the same in trust for plaintiff and

shall forthwith endorse or transfer and such instruments, or both, to plaintiff for application to the satisfaction of its obligations.

50.     Section 8 of each of the Security Agreement provides that upon the occurrence of any Event of default and any time thereafter, plaintiff, acting through the appointed Agent, shall have the right to exercise all of the remedies conferred under the said Security Agreement and the June Note, and the Agent shall have enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same.

51.     That plaintiff was appointed as the Agent under the June Security Agreement.

52.     Defendant breached its obligations under the June Note as set forth herein-above.

53.     Since its default under the June Note, defendant failed, refused and neglected to hold in trust for plaintiff any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, however payable, or of any check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum, and to forthwith endorse or transfer and such instruments to plaintiff for application to the satisfaction of its obligations.

54.     Upon information and belief, since its default under the June Note, defendant has received revenue, income, dividend, interest or other sums subject to plaintiff's security interests, whether payable pursuant to the Notes or otherwise, or of any check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum, and has applied same to payment of obligations other than those due to plaintiff.

55.     Defendant's failure, refusal and neglect to hold in trust for plaintiff any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, whether payable pursuant to the Notes or otherwise, or of any check, draft, note, trade acceptance or other

instrument evidencing an obligation upon its default and pay any such sum, and to forthwith endorse or transfer and such instruments, or both, to plaintiff for application to the satisfaction of its obligations is a breach of the terms of the June Security Agreement.

56.     By reason of the foregoing, plaintiff is entitled to judgment appointing it as receiver to exercise all of the remedies conferred under the said Security Agreement and the June Note, and the Agent shall have enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same to satisfy defendant's obligations to plaintiff.

WHEREFORE, plaintiff demands judgment against defendant as follows:

1.     On Count One, in the amount of $1,352,179.69, together with interest at the default rate of 18% per annum from June 10, 2019.

2.     On Count Two, in the amount of $659,458.95, together with interest thereon at the default rate of 18% per annum from June 10, 2019.

3.     On Count Three, appointing plaintiff as receiver to exercise all of the remedies conferred upon it as Agent under the June Security Agreement and the June Note, and to have all the enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same to satisfy defendant's obligations to plaintiff.

4.     For the costs and disbursements of this Action, including plaintiff's reasonable attorney fees.

5.     For such other and further relief as the Court deems just and proper.

[Signature Page Follows]

Dated:  Rockville Centre, New York
        August 21, 2019

                                           Law Office of Paul A. Rachmuth

                                           By:     /s/ Paul A. Rachmuth
                                                   Paul A. Rachmuth, (pr-1566)
                                           265 Sunrise Highway, Suite 62
                                           Rockville Centre, New York 11570
                                           Telephone: (516) 330-0170

                                           Attorney for the Plaintiff