UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MEF I, LP,

                                       Plaintiff,

    -against-

SHIFTPIXY, INC.,

                                       Defendant.
------------------------------------------------------------------x

Case No.: 19-cv-8019-KPF

Civil Action

## DECLARATION IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER

JOSHUA SASON hereby declares under penalty of perjury under the laws of the United States of America:

1. I am the Manager of the General Partner of MEF I, LP, the plaintiff in the above captioned action, and am personally familiar with the facts set forth herein. I make this declaration in support of plaintiff's application for an order: (a) pursuant to Fed. R. Civ. Proc. 65, enjoining defendant ShiftPixy, Inc. from using, selling, transferring or disposing of any of the Collateral, or any part thereof, as defined in that certain written Security Agreement dated June 4, 2018, executed and delivered by defendant to plaintiff; and (b) pursuant to Fed. R. Civ. Proc. 66, appointing plaintiff as receiver to exercise all of the remedies and rights conferred upon it by written agreement between the parties under that Security Agreement dated June 4, 2018, including but not limited to the right to take possession of the Collateral as defined in said agreement, including but not limited to any and all revenue, income, dividend, interest, check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum to defendant.

2.      On June 4, 2018, plaintiff and defendant entered into a written Securities Purchase Agreement whereby plaintiff agreed, subject to the terms and conditions thereof, to subscribe for a warrant for 251,004 shares of defendant's stock for a subscription amount of $2,250,000.00. Annexed hereto as <u>Exhibit "A"</u> is a true copy of the Securities Purchase Agreement.

3.      On June 4, 2018, for good and valuable consideration, and pursuant to the terms of the Securities Purchase Agreement, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $2,500,000 (the "June Note"), which note was due and payable by September 4, 2019. Annexed hereto as <u>Exhibit "B"</u> is a true copy of the June Note.

4.      On June 4, 2018, defendant executed and delivered to plaintiff a Security Agreement pursuant to the terms of the June Note granting plaintiff a security interest in and certain rights with respect to the Collateral as defined therein, including, but not limited to, collect and take possession of the Collateral upon the occurrence of an Event Default as more fully described in said agreement, the Securities Purchase Agreement and the June Note. Annexed hereto as <u>Exhibit "C"</u> is a true copy of the Security Agreement.

5.      Pursuant to the Security Agreement, defendant granted plaintiff a security interest in various Collateral, including but not limited to: all contract rights and other intangibles; all accounts, together with all documents of title; all letter of credit rights, instruments and chattel paper; all deposit accounts and cash; all supporting obligations; and all intellectual property.

6.      On June 11, 2018, plaintiff filed UCC-1 Financing Statements perfecting its security interest in all of defendant's property and assets as more fully described in such UCC-1

financing statements. Annexed hereto as <u>Exhibit "D"</u> is a true copy of the UCC-1 Financing Statement filed by plaintiff.

       7.      Section 7 of the Security Agreement provides that upon the occurrence of any Event of Default and any time thereafter, defendant shall, upon receipt of any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, whether payable pursuant to the Notes or otherwise, or of any check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum, hold the same in trust for plaintiff and shall forthwith endorse or transfer and such instruments, or both, to plaintiff for application to the satisfaction of its obligations.

       8.      Section 8 of the Security Agreement provides that upon the occurrence of any Event of Default and any time thereafter, plaintiff, acting through the appointed Agent, shall have the right to exercise all of the remedies conferred under the said Security Agreement and the June Note, and the Agent shall have enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same, and plaintiff was appointed as the Agent.

       9.      On June 4, 2018, pursuant to the terms of the Securities Purchase Agreement and the June Note, and in furtherance thereof, defendant executed and delivered to plaintiff a Registration Rights Agreement which provided, among other things, for defendant to file a registration statement to cover the securities as defined therein for which plaintiff subscribed under the Securities Purchase Agreement within 30 days of June 4, 2018. Annexed hereto as Exhibit "E" is a true copy of the Registration Rights Agreement.

10.     On June 4, 2018, J. Stephen Holmes, a shareholder of the defendant, executed a securities lockup agreement (the "Lockup Agreement"), pursuant to which he agreed not to sell any shares of the defendant for so long as any amount of the June Note was outstanding. Annexed hereto as Exhibit "F" is a true copy of the Lockup Agreement.

11.     On December 20, 2018, for good and valuable consideration, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $222,222.22 (the "December Note"), which note was due and payable by December 31, 2019. Annexed hereto as Exhibit "G" is a true copy of the December Note.

12.     Pursuant to Section 2(a) of the June and December Notes, defendant was obligated to pay interest to plaintiff on the aggregate unconverted and then outstanding principal amount of the Note at the rate of 8% per annum, payable monthly, beginning on the first date after the Original Issue Date, on each Conversion Date (as to that principal amount then being converted), on each Optional Redemption Date (as to that principal amount then being redeemed), on each Mandatory Redemption Date (as to that principal amount then being redeemed) and on the Maturity Date, the initial twelve months' interest amount being guaranteed and the remaining unpaid portion thereof being accelerated and payable in connection with any conversion of said Notes.

13.     Pursuant to Section 2(d) of the June and December Notes, all overdue accrued and unpaid interest would entail a late fee at an interest rate equal to 18% per annum.

14.     Pursuant to Section 2(e) of the June and December Notes, commencing with the first day of the month after the date that is the earlier of the date that a Registration Statement covering the shares underlying the Note has been declared effective by the Securities Exchange

Commission or one hundred and eighty days after the Original Issue Date, and continuing on the first day of each of the following successive months thereafter until the Maturity Date, defendant was obligated to redeem said Notes pursuant to Schedule 2(e) of said Notes.

15. Sections 8 of the June and December Notes list acts or occurrences which constitute a default under the Notes ("Events of Default"), which included, among other things:

   a. The failure to make payment of the principal interest, liquidated damages and other amounts owing to plaintiff on any Note if not cured within 3 trading days after notice;

   b. The failure of the defendant to observe or perform any covenant, obligation or agreement contained in the Notes if not cured within 10 trading days after the defendant has become or should have become aware of such failure; and

   c. If any Person breaches any agreement delivered pursuant to the Purchase Agreement.

16. Pursuant to Section 8(a) of the June and December Notes, a failure to make payment of the principal amount of any Note or interest, liquidated damages and other amounts owing to plaintiff on any Note shall constitute an Event of Default if not cured within 3 trading days.

17. Pursuant to Section 8(b) of the June and December Notes, if an Event of Default occurs, the outstanding principal amount of each of said Notes, plus accrued but unpaid interest, liquidated damages and other amounts owing respect thereof shall become, at plaintiff's election, immediately due and payable in cash at the Mandatory Default Amount as defined in each of said Notes.

18. Defendant failed to make the payments it was obligated to make to plaintiff under the June Note when due on June 10, 2019 in the total amount of $643,784.38.

19. Defendant failed to make the payments it was obligated to make to plaintiff under the December Note when due on June 10, 2019 in the total amount of $313,974.08.

20. On June 10, 2019, plaintiff served defendant with a Notice of Default pursuant to Section 8(a)(i) of the June and December Notes, demanding payment of the mandatory default amount of $928,124.78. Annexed hereto as Exhibit "F" is a true copy of the Notice of Default.

21. Defendant failed, refused and neglected to cure its default within the time allowed therefor under the parties' respective agreements and no extension, waiver or modification thereof has been granted or consented or agreed to by plaintiff.

22. On July 7, 2019, the defendant, by way of a Form 8-K filed with the Securities and Exchange Commission on July 12, 2019, announced the repurchase of up to 10,000,000 of its shares (the "Share Repurchase"). Annexed hereto as Exhibit "I" is a true copy of the defendant's Form 8-K filed on July 12, 2019 with the Securities and Exchange Commission.

23. The Share Repurchase is in direct violation of the negative covenants contained in Section 7(d) of the June and December Notes and constitutes an Event of Default thereunder pursuant to Section 8(a)(ii)) of the June and December Notes.

24. On July 17, 2019, J. Stephen Holmes sold 558,132 shares of the defendant's common stock as announced by way of Form 4 filed by defendant on July 19, 2019 with the Securities and Exchange Commission (the "Holmes Stock Sale"). Annexed hereto as Exhibit "J" is a true copy of the defendant's Form 4 filed on July 19, 2019 with the Securities and Exchange Commission.

25. The Holmes Stock Sale is a breach of the Holmes Lockup Agreement and constitutes defaults of the June and December Notes pursuant to Section 8(a)(ii)) of said Notes.

26. By reason of defendant's defaults, there is now due the total sum of $2,011,638.64 from defendant with interest thereon at the rate of 18% per annum from June 10, 2019.

27. Notwithstanding the express terms of Section 7 of Security Agreement mandating that upon the occurrence of any Event of default and any time thereafter, defendant shall hold in trust for plaintiff any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, defendant has diverted all such Collateral for its own purposes and continues to do so.  As such, it is imperative that defendant be enjoined for continuing to use the Collateral which constitutes the security given to plaintiff for its own purposes as it will be dissipated and nothing will remain to satisfy the amounts due to plaintiff.

28. By reason of defendant's default, pursuant to Section 8 of the Security Agreement, plaintiff, as the appointed Agent, shall have the right to exercise all of the remedies conferred under the said Security Agreement and the June Note, and is entitled to have all the enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same.

29. I declare and certify under penalty of perjury and the laws of the United States of America that the foregoing statements made by me are true and correct.

Dated: New York, New York       /s/ Joshua Sason
       September 3, 2019              Joshua Sason
                                      Manager of the General Partner of
                                      MEF I, LP