UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEF I, LP,

                             Plaintiff,                    Civil Action No.:

      - against -                                     19-cv-8019-KPF

SHIFTPIXY, INC.

                             Defendant.


MEMORANDUM OF LAW IN SUPPORT OF A PRELIMINARY
INJUNCTION AND THE APPOINTMENT OF A TEMPORARY RECEIVER


Law Office of Paul A. Rachmuth
265 Sunrise Highway, Ste. 62
Rockville Centre, NY  11570
(516) 330-0170

Counsel for the Plaintiff

# Contents

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ......................................................................................................................... 5

CONCLUSION ...................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Cases**

D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., 550 F.Supp 2d 481, (S.D.N.Y. 2008) ................................................................................................................. 6

Rosen v. Siegel, 106 F.3d 28,(2d Cir. 1997) .................................................................................. 6

Varsames v. Palazzolo, 96 F. Supp.2d 361 (S.D.N.Y. 2000) ........................................................ 6


**Statutes**

Fed. R. Civ. Proc. 65 ...................................................................................................................... 7

Fed. R. Civ. Proc. 66 ...................................................................................................................... 7

**Treatises**

Wright & Miller, Federal Practice & Procedure § 2983 (1999) ..................................................... 6

## INTRODUCTION

Plaintiff MEF I, LP submit this Memorandum of Law in support of its application, made by way of order to show cause, for an order: (a) pursuant to Fed. R. Civ. Proc. 65, enjoining defendant ShiftPixy, Inc. from using, selling, transferring or disposing of any of the Collateral, or any part thereof, as defined in that certain written Security Agreement dated June 4, 2018, executed and delivered by defendant to plaintiff; and (b) pursuant to Fed. R. Civ. Proc. 66, appointing plaintiff as receiver to exercise all of the remedies and rights conferred upon it by written agreement between the parties under that Security Agreement dated June 4, 2018, including but not limited to the right to take possession of the Collateral as defined in said agreement, including but not limited to any and all revenue, income, dividend, interest, check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum to defendant.

## STATEMENT OF FACTS

On June 4, 2018, plaintiff MEF I, LP and defendant ShiftPixy, Inc. entered into a written Securities Purchase Agreement whereby plaintiff agreed, subject to the terms and conditions thereof, to subscribe for a warrant for 251,004 shares of defendant's stock for a subscription amount of $2,250,000.00.  *See* Exhibit "A" to Morris Decl.[1]

On June 4, 2018, for good and valuable consideration, and pursuant to the terms of the Securities Purchase Agreement, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $2,500,000 (the "June Note"), which note was due and payable by September 4, 2019.  *See* Exhibit "B" to Morris Decl.  Also, on June 4,

---

[1] References are to the Declaration of Ari Morris dated September 3, 2019 and exhibits attached thereto submitted in support of plaintiff's application.

2018, defendant executed and delivered to plaintiff a Security Agreement pursuant to the terms of the June Note granting plaintiff a security interest in and certain rights with respect to the Collateral, as defined therein, including but not limited to the right to collect and take possession of the Collateral upon the occurrence of an Event Default as more fully described in said agreement, the Securities Purchase Agreement and the June Note.  *See* Exhibit "C" to Morris Decl, p. 15.

Pursuant to the Security Agreement, defendant granted plaintiff a security interest in various Collateral, including but not limited to: all contract rights and other intangibles; all accounts, together with all documents of title; all letter of credit rights, instruments and chattel paper; all deposit accounts and cash; all supporting obligations; and all intellectual property.  *See* Exhibit "C" to Morris Decl, p. 2.

Plaintiff perfected its security interest in all of defendant's property on June 11, 2018 by filing a UCC-1 Financing Statement.  *See* Exhibit "D" to Morris Decl; *also* Morris Decl., ¶ 9.

Section 7 of the Security Agreement provides that upon the occurrence of any Event of Default and any time thereafter, defendant shall, upon receipt of any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, whether payable pursuant to the Notes or otherwise, or of any check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum, hold the same in trust for plaintiff and shall forthwith endorse or transfer and such instruments, or both, to plaintiff for application to the satisfaction of its obligations.  *See* Exhibit "C" to Morris Decl, pp 14.

Section 8 of the Security Agreement provides that upon the occurrence of any Event of Default and any time thereafter, plaintiff, acting through the appointed Agent, shall have the right

to exercise all of the remedies conferred under the said Security Agreement and the June Note, and shall have enumerated powers and rights thereunder, including but not limited to the right to take possession of the Collateral and sell same.  Plaintiff was appointed as the Agent under the Security Agreement.  *See* Exhibit "C" to Morris Decl, pp 19.

On December 20, 2018, for good and valuable consideration, defendant executed and delivered to plaintiff an 8% Senior Secured Convertible Note in the principal amount of $222,222.22 (the "December Note"), which note was due and payable by December 31, 2019.  *See* Exhibit "E" to Morris Decl.

Pursuant to Section 2(a) of the June and December Notes, defendant was obligated to pay interest to plaintiff on the aggregate unconverted and then outstanding principal amount of the Note at the rate of 8% per annum, payable monthly, beginning on the first date after the Original Issue Date, on each Conversion Date (as to that principal amount then being converted), on each Optional Redemption Date (as to that principal amount then being redeemed), on each Mandatory Redemption Date (as to that principal amount then being redeemed) and on the Maturity Date, the initial twelve months' interest amount being guaranteed and the remaining unpaid portion thereof being accelerated and payable in connection with any conversion of said Notes. *See* Exhibit "A" and Exhibit "E" to Morris Decl.

Pursuant to Section 2(d) of the June and December Notes, all overdue accrued and unpaid interest would entail a late fee at an interest rate equal to 18% per annum. *See* Exhibit "A" and Exhibit "E" to Morris Decl.  In addition, according to Section 2(e) of the June and December Notes, commencing with the first day of the month after the date that is the earlier of the date that a Registration Statement covering the shares underlying the Note has been declared effective by

the Securities Exchange Commission or one hundred and eighty days after the Original Issue Date, and continuing on the first day of each of the following successive months thereafter until the Maturity Date, defendant was obligated to redeem said Notes pursuant to Schedule 2(e) of said Notes. *See* Exhibit "A" and Exhibit "E" to Morris Decl.

Pursuant to Section 8(a) of the June and December Notes, a failure to make payment of the principal amount of any Note or interest, liquidated damages and other amounts owing to plaintiff on any Note shall constitute an Event of Default if not cured within 3 trading days. *See* Exhibit "A" and Exhibit "E" to Morris Decl.

Pursuant to Section 8(b) of the June and December Notes, if an Event of Default occurs, the outstanding principal amount of each of said Notes, plus accrued but unpaid interest, liquidated damages and other amounts owing respect thereof shall become, at plaintiff's election, immediately due and payable in cash at the Mandatory Default Amount as defined in each of said Notes. *See* Exhibit "A" and Exhibit "E" to Morris Decl.

Defendant failed to make the payments it was obligated to make to plaintiff under the June Note when due on June 10, 2019 in the amount of $643,784.38. *See* Morris Decl, ¶ 20. Defendant also failed to make the payments it was obligated to make to plaintiff under the December Note when due on June 10, 2019 in the amount of $313,974.08. *See* Morris Decl, ¶ 21.

On June 10, 2019, plaintiff served defendant with a Notice of Default pursuant to Section 8(a)(i) of the June and December Notes, demanding payment of the mandatory default amount of $928,124.78. *See* Exhibit "F" to Morris Decl.

Defendant failed to cure its default within the time allowed therefor and no extension, waiver or modification thereof has been granted or consented or agreed to by plaintiff, by reason

of which there is now due the total accelerated sum of $2,011,638.64 to plaintiff from defendant with interest thereon at the rate of 18% per annum from June 10, 2019. *See* Morris Decl, ¶¶ 24 - 25.

Notwithstanding the express terms of Section 7 of Security Agreement mandating that upon the occurrence of any Event of default and any time thereafter, defendant shall hold in trust for plaintiff any revenue, income, dividend, interest or other sums subject to plaintiff's security interests, defendant has diverted all such Collateral for its own purposes and continues to do so. As such, it is imperative that defendant be enjoined for continuing to use the Collateral which constitutes the security given to plaintiff for its own purposes as it will be dissipated and nothing will remain to satisfy the amounts due to plaintiff. *See* Morris Decl, ¶ 26.

## ARGUMENT

**PURSUANT TO THE TERMS OF THE PARTIES' EXPRESS AGREEMENT, AND BY REASON OF THE DEFENDANT'S DEFAULT AND USE OF THE COLLATERAL IN VIOLATION OF SAID AGREEMENT, PLAINTIFF IS ENTITLED TO BE APPOINTED AS RECEIVER FOR THE COLLATERAL**

The issue presented by plaintiff's application involves whether, by reason of defendant's default under the parties' various agreements, it is entitled to be appointed as receiver with the right to exercise all of the remedies conferred under the Security Agreement and the promissory notes executed and delivered to it by defendant, including but not limited to the right to take possession of the Collateral described in the Security Agreement and sell same.

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *See* <u>Varsames v. Palazzolo</u>, 96 F. Supp.2d 361, 365 (S.D.N.Y. 2000). "The

appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *See* Rosen v. Siegel, 106 F.3d 28, 34 (2nd Cir. 1997) (internal alterations and quotation marks omitted). The following factors are relevant to establishing the need for a receivership:

> Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property."

*See* Varsames, 96 F. Supp. 2d at 365 (quoting Wright & Miller, Federal Practice & Procedure § 2983 (1999)) (internal alterations omitted).

In this case, pursuant to the Security Agreement between the parties, defendant consented to the appointment of plaintiff as receiver in the event of a default and, therefore, it bears the burden of demonstrating why a receiver should not be appointed. *See* D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., 550 F.Supp 2d 481, 491 (S.D.N.Y. 2008); *see also* U.S. Bank N.A. v. Crutch, 2010 U.S. Dist. LEXIS 75481 *13 (E.D.N.Y. July 23, 2010).

Moreover, not only had defendant defaulted under the subject Notes, but it also violated the express provisions of Section 7 of the Security Agreement mandating that upon the occurrence of any Event of default and any time thereafter, defendant shall hold in trust for plaintiff any revenue, income, dividend, interest or other sums subject to plaintiff's security interests in such Collateral, defendant has diverted all such Collateral for its own purposes and continues to do so. Under the circumstances, it is imperative that defendant be enjoined for continuing to use the Collateral which constitutes the security given to plaintiff for its own purposes as it will be dissipated and nothing will remain to satisfy the amounts due to plaintiff.

## **CONCLUSION**

Based on the foregoing, it is respectfully submitted that the Court grant plaintiffs' instant application and issue an order: (a) pursuant to Fed. R. Civ. Proc. 65, enjoining defendant ShiftPixy, Inc. from using, selling, transferring or disposing of any of the Collateral, or any part thereof, as defined in that certain written Security Agreement dated June 4, 2018, executed and delivered by defendant to plaintiff; and (b) pursuant to Fed. R. Civ. Proc. 66, appointing plaintiff as receiver to exercise all of the remedies and rights conferred upon it by written agreement between the parties under that Security Agreement dated June 4, 2018, including but not limited to the right to take possession of the Collateral as defined in the Security Agreement, including but not limited to any and all revenue, income, dividend, interest, check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum to defendant.

WHEREFORE, Plaintiff, MEF I, LP, respectfully requests this Court grant the Order to Show Cause and such other and further relief as it deems just and proper.

Law Office of Paul A. Rachmuth

By:   /s/ Paul A. Rachmuth
        Paul A. Rachmuth (pr-1566)
265 Sunrise Highway, Ste. 62
Rockville Centre, NY  11570
(516) 330-0170

*Counsel for the Plaintiff*