UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEF I, LP,                                          :

                Plaintiff,              :        19 Civ. 8019 (PGG)

      - against -                          :

SHIFTPIXY, INC.,                              :

                Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF DEFENDANT SHIFTPIXY, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND APPOINTMENT OF A RECEIVER**


KARLINSKY LLC
103 Mountain Road
Cornwall-on-Hudson, New York 12520
(646) 437-1430
Martin E. Karlinsky, Esq.
Bonnie H. Walker, Esq.

martin.karlinsky@karlinskyllc.com
bonnie.walker@karlinskyllc.com


*Attorneys for Defendant*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Preliminary Statement................................................................................................................ 1

FACTS .......................................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

I.        MEFI'S MOTION IS BARRED BY COLLATERAL ESTOPPEL................................... 5

II.       MEFI HAS FAILED TO SATISFY THE REQUISITES
          FOR A RECEIVERSHIP OR RESTRAINING ORDER ................................................. 9

          A.        Rule 66 Legal Standards.......................................................................... 9

          B.        Rule 65 Legal Standards...................................................................... 12

          C.        Legal Standards Applied to this Motion................................................ 13

III.      IF AN INJUNCTION OR RECEIVERSHIP ORDER ISSUES IT SHOULD BE
          CONDITIONED ON MEFI POSTING SUBSTANTIAL SECURITY ........................... 15

CONCLUSION............................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. Carter*, No. 2:17-civ-121 (D. Vt. Aug. 17, 2018) .......................................................... 5

*Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208 (1927) ........................................................ 11

*Consol. Rail Corp. v. Fore River Ry.*, 861 F.2d 322 (1st Cir. 1988) ........................................... 11

*D.B. Zwirn Special Opportunities Fund LP v. Tama Broadcasting Inc.*,
    550 F.Supp.2d 481 n.72 (S.D.N.Y. 2008) ............................................................................... 11

*Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975 (2nd Cir. 1996) ................................................ 17

*Doninger v. Niehoff*, 527 F.3d 41 (2d Cir. 2008) ........................................................................ 12

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ............................... 13

*Garten v. Hochman*, No. 08-civ-9425-PGG (S.D.N.Y. Jun 15, 2010) .......................................... 6

*Gordon v. Washington*, 295 U.S. 30 (1935) ............................................................................... 11

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007)................................. 13

*Hanson Tr. PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264 (2d Cir. 1986) ............................... 12

*Hartford Ins. Co. of Midwest v. Estate of Tollardo*, 409 F.Supp.2d 1301 (D. N.M. 2005)........... 6

*Houbigant, Inc. v. Development Specialist, Inc.*, 229 F.Supp.2d 208 (S.D.N.Y. 2002)................. 6

*Int'l Creative Mgmt., Inc. v. Abate*, No. 07-civ-1979-PKL
    (S.D.N.Y. Mar. 28, 2007).......................................................................................................... 17

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002)................................................................ 13

*Miss Jones LLC v. Stiles*, No. 17-civ-1450-NSR (S.D.N.Y. Jul. 10, 2019)................................... 11

*Monowise Ltd. v. OZY Media, Inc.*, No. 17-civ-8028  (S.D.N.Y. May 3, 2018)........................... 13

*Rosen v. Siegel*, 106 F.3d 28 (2d Cir. 1997) ............................................................................... 10

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
    60 F.3d 27 (2d Cir. 1995) .......................................................................................................... 12

*U.S. Bank National Ass'n v. Nesbitt Bellevue Property LLC*,
    866 F.Supp.2d 247 (S.D.N.Y. 2012).................................................................................. 11, 12

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*,
    No. 13-CV-7639 (LTS), 2015 WL 1055933 (S.D.N.Y. Mar. 11, 2015)................................... 13

*Varsames v. Palazzolo*, 96 F.Supp.2d 361 (S.D.N.Y. 2000) .................................................. 9, 11

*Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*,
   983 F.2d 1176 (2d Cir. 1993) ................................................................................. 6

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); ................................... 12

**Treatises**

SINCLAIR ON FEDERAL CIVIL PRACTICE § 6:4 (5TH ED. 2019) .................................. 9, 10

**Rules and Statues**

28 U.S.C. § 754 ............................................................................................................. 15

28 U.S.C. §§1292(a)(1) and 1292(a)(2) ....................................................................... 10

Fed. R. Civ.  P. 65(c) ............................................................................................... 15, 16

Fed. R. Civ. P. 66 ........................................................................................................... 9

Fed. R. Civ. P. 83 ......................................................................................................... 10

## Preliminary Statement

Plaintiff  MEF I, LP ("MEFI") moves against defendant ShiftPixy, Inc. ("ShiftPixy") (a) under Fed. R. Civ. P. Rule 65, for injunctive relief preventing ShiftPixy "from using, selling, transferring or disposing of any of the Collateral [pledged to secure a senior convertible note] . . ., as defined in that certain written Security Agreement dated June 4, 2018, executed and delivered by [ShiftPixy] to [MEFI]," and (b) under Fed. R. Civ. P. Rule 66, for an order "appointing [plaintiff MEFI itself] as receiver to exercise all of the remedies and rights conferred upon it by written agreement between the parties under that Security Agreement dated June 4, 2018, including but not limited to the right to take possession of the Collateral as defined in said agreement, including but not limited to any and all revenue, income, dividend, interest, check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum to defendant."  (Dkt. # 5.1, Declaration of Joshua Sason, dated September 3, 2019 at ¶ 1.)

Stated starkly, in the guise of seeking to enforce its putative contract rights, MEFI wants to put ShiftPixy out of business.  The result of granting the relief MEFI seeks would be, simply put, catastrophic.  Permitting MEFI to take ShiftPixy's reins as receiver and restraining ShiftPixy from use of its assets for all purposes, even if only *pendente lite*, would stop ShiftPixy and its business operations in their tracks.  (Absher Decl. ¶ 33.)

These steps would literally destroy a young public company with duties to stakeholders well beyond MEFI.  They would irreparably harm not only ShiftPixy's stockholders, founders, officers, directors, employees, clients, almost 250 clients, and the roughly 13,000 worksite users of its internet platform who work for those clients, but also the very noteholders, MEFI among

them, that hold ShiftPixy's senior debt.  (Absher Decl. ¶ 9.) [1]  The relief MEFI seeks is

extraordinary and extreme; it is unjustified and unjustifiable.  MEFI's application for such relief

will not withstand scrutiny.

    *First*, the application is barred by collateral estoppel.  As we show in our argument,

MEFI is in privity with both Alpha Capital Anstalt ("Alpha") and Dominion Capital LLC

("Dominion"), plaintiffs in the cases before this Court related to this case.  In ruling on Alpha's

and Dominion's Rule 65 motions just this past summer, the Court in essence held that neither

could demonstrate the *sine qua non* for equitable relief—that by reason of ShiftPixy's acts or

omissions they would imminently suffer harm that was irreparable.  And without that showing,

they could not invoke the Court's equitable powers.  Moreover, the Court also found that neither

Alpha's nor Dominion's insolvency arguments, as well as Dominion's argument based on the

proposed ShiftPixy stock buyback program, were sufficient to stand as a proxy for irreparable

harm.  And all other requisites of collateral estoppel are satisfied.

    *Second*, and even if the Court does not accept the collateral estoppel bar, the essential

requisite, the *sine qua non*, of the equitable relief MEFI seeks—a clear showing that, but for the

Court's grant of the relief requested, it will suffer irreparable harm—is entirely lacking.  While

MEFI relies on its contracts (the Notes and Security Agreement) with ShiftPixy, and their

acknowledgement that breaches would cause irreparable injury to ShiftPixy's noteholders, to

---

[1] As of August 31, 2019, ShiftPixy and its subsidiary had approximately 246 clients with over 13,000
worksite employees.  ShiftPixy processed payroll of over $350 million during the fiscal year ending
August 31, 2019, an increase of nearly 60% year over year.  Of the 13,000 worksite employees,
approximately 60% represent workers in the restaurant industry.  Additionally, as of August 31, 2019,
ShiftPixy employed 67 people on a full-time basis in its corporate offices in Irvine, California.  (Absher
Decl. ¶ 9.)  The Absher Declaration fully explains ShiftPixy's business model and how it designates
clients and employees of clients (the "worksite employees").  (Absher Decl. ¶ 3-9.)

satisfy this element, that is only one factor to be considered in showing irreparable harm.[2]  It is not controlling and the Court is not bound by it.  Relatedly, a core element of the Court's equitable power that must be demonstrated—inadequacy of the remedy at law in the form of money damages—remains wholly unsatisfied (and is also precluded by the Court's rulings in the related cases that neither Alpha nor Dominion could satisfy this requirement).  To the contrary, money damages employing the usual measure under New York law are fully adequate to compensate MEFI for the breaches of refusal to convert indebtedness to equity and non-payment.

*Third*, MEFI's arguments that immaterial alleged contract breaches—the adoption by ShiftPixy's board of a stock buyback program that has never been put into effect and the alleged repurchase by ShiftPixy of shares of one of its founders—are in violation of prohibitions contained in the parties' agreements and will justify equitable relief are simply wrong (and at least with respect to the stock buyback program have also been rejected by this Court before) (Absher Decl. ¶¶28-39.)  Again to the contrary, neither are breaches—the stock buyback program was never implemented and ShiftPixy is under an order of this Court to notify its noteholders (and the Court) if it does intend to implement it to allow noteholders the opportunity to again petition for an injunction to restrain it.  (Absher Decl. ¶¶28-32.)

*Fourth and finally*, apparently relying again on the acknowledgements in the parties' agreements that security need not be posted to redress harm to ShiftPixy by an inappropriate grant of a receivership or restraining order, MEFI has failed even to address the bond requirement, a requirement that under applicable law is not even discretionary.  ShiftPixy has a current enterprise value in excess of $50 million.  In that perspective, a bond in the amount of

---

[2] Capitalized terms used here have the same meanings ascribed to them in the Absher Declaration, filed in opposition to this motion.

$25 million would not be unreasonable, and might be barely sufficient to make ShiftPixy and its stakeholders whole from the harm that would result from the improvident grant of this equitable relief.

For these reasons and the reasons that follow, MEFI's motion for such relief should be denied in its entirety.

## FACTS

The facts relevant to the motion are set forth in full in the Declaration of Scott W. Absher, dated November 13, 2019 ("Absher Decl.") and filed herewith.  In the interest of conserving both judicial and lawyer resources, they are summarized in the argument section of this brief only as necessary.  We respectfully refer the Court to the Absher declaration for its full content.

*     *     *

**ARGUMENT**

**I.**

**MEFI'S MOTION IS BARRED BY COLLATERAL ESTOPPEL**

Preliminarily, MEFI's motion is likely barred by collateral estopped.  The Court should employ that doctrine against MEFI to reject its application.  To begin, as this Court knows well, this case is one of three related cases before it.  The others are *Alpha Capital Anstalt v. ShiftPixy, Inc*. (19-cv-6199 (PGG)) (the "Alpha Action"), and *Dominion Capital LLC v. ShiftPixy, Inc*., (19-cv-6704 (PGG)) (the "Dominion Action").  The Court's rulings in those related cases on plaintiffs' respective motions for Rule 65 preliminary injunctive relief (*see* Alpha Action Dkt. # 12 and Dominion Action Dkt. # 19) have essentially established a bar not only to the equitable relief that plaintiffs sought there, but also to the equitable relief MEFI seeks here.[3]  In particular, the Court's rejection of plaintiffs' irreparable harm and insolvency arguments, as well as the Court's rejection of Dominion's argument based on the proposed ShiftPixy stock buyback program, would seem to stop cold MEFI's arguments on this motion.

One recent district court decision summarized the elements of the collateral estoppel doctrine:

> Federal principles of collateral estoppel require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Aguiar v. Carter*, No. 2:17-civ-121 (D. Vt. Aug. 17, 2018), at *11.

---

[3]  Neither Alpha nor Dominion, plaintiffs in those cases, has abandoned the arguments made on their motions for preliminary injunctive relief, despite the Court's rulings against them, and both are pressing claims for *permanent* equitable relief as part of their respective summary judgment motions.  (*See* Alpha Action, Dkt. # 31 at 5 and 18; *see* Dominion Action Dkt. # 37 at 17.)

And one further element must be shown. "Collateral estoppel . . . requires that the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication...." *Hartford Ins. Co. of Midwest v. Estate of Tollardo*, 409 F.Supp.2d 1301, 1309 (D. N.M. 2005), *cited with approval in State Farm Ins. Co. v. Travelers Indem. Co*., No. 5:06-civ-1473-GTS-GJD (N.D.N.Y. Nov. 17, 2009), at \*9 fn.5. To satisfy the privity requirement, the relationship between the parties must be one of "actual privity of contract," or "so close as to approach that of privity." *Sanders v. Bressler*, No. 03-civ-5283-DRH-WDW (E.D.N.Y. Feb. 10, 2006), at \*6 (citing *State of Ca. Public Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434 (2000) (quoting *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 382 (1992) (some quotation marks omitted)).[4]

Here, all requisites are met. We start with privity. Of course, MEFI is not identical to either Alpha or Dominion; and MEFI did not litigate the motions Alpha and Dominion litigated and lost. They are not in actual privity. But the relationship among them in connection with the transactions that underlie these related cases is tantamount to actual privity.[5] First, MEFI, Alpha,

---

[4] Of course, while the "law of the case doctrine" does not apply to those preliminary rulings, *see Garten v. Hochman*, No. 08-civ-9425-PGG (S.D.N.Y. Jun 15, 2010) at \*5 fn.1 (citing *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc*., 962 F.2d 268, 274 (2d Cir. 1992)), nonetheless they carry substantial weight here. Even if the Court were to reject ShiftPixy's argument based on collateral estoppel, the principles that underpin the collateral estoppel doctrine—judicial efficiency, consistency in decision-making, and finality in judgments—would compel the conclusion that MEFI is barred from raising here the arguments this Court has already rejected in the Alpha and Dominion Actions.

[5] While we recognize that New York courts narrowly interpret this exception to the requirement of actual privity, *see*, *e.g*., *Williams and Sons Erectors, Inc. v. South Carolina Steel Corp*., 983 F.2d 1176, 1182 (2d Cir. 1993) ("New York courts have recognized that '[t]he ambit of duty created by privity and relationships so close as to approach that of privity is narrowly defined in this State'") (quoting *Prudential-Bache Secs., Inc. v. Resnick Water St. Dev. Co*., 161 A.D.2d 456, 457, 555 N.Y.S.2d 367 (1st Dep't 1990)); *Houbigant, Inc. v. Development Specialist, Inc*., 229 F.Supp.2d 208, 216 (S.D.N.Y. 2002), *overruled in part on other grounds by Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436 (2d Cir. 2005) (noting that "exception to the privity rule has been construed narrowly"), the facts present here fully satisfy the exception.

and Dominion—each an investment fund—are all parties to the same series of transactions. Each purchased the senior convertible notes of ShiftPixy that are in issue here.  They all executed identical transaction documents, each containing the very same language (and covenants, promises, undertakings, and prohibitions) as the others.  (Absher Decl. ¶¶19-21.)

Alpha, Dominion, and MEFI conducted their affairs in the same manner following their purchase of the notes—they demanded or allowed wholesale conversion of debt to equity, and they each immediately sold the shares so converted into the public marketplace.  Indeed, in the aggregate, these three investors and the other two convertible noteholders (who have not sued ShiftPixy) converted and sold 8.3 million shares of ShiftPixy's common stock over the last 10 months (actually in the seven months ending May 31, 2019, representing roughly 68% of the public float when ShiftPixy ceased honoring conversions).  (Absher Decl. ¶ 40.)  And most important of all, Alpha and Dominion (and the other investors) made MEFI their *agent* for the very purposes of restraining ShiftPixy's assets *pendente lite*.  (*See* Security Agreement, ¶ 18, filed as Attachment 2 to the Absher Declaration.)  In short, it would be hard to imagine a relationship among parties/investors such as these that approaches actual privity more closely.

The other requisites of the collateral estoppel doctrine are also plainly met.  *First*, issues identical to those raised by MEFI and by this motion were raised in the prior two related cases, the Alpha Action and Dominion Action, and were rejected by the Court.  As pointed out above, those are:  plaintiffs' (1) irreparable harm arguments, (2) insolvency arguments, and (3) arguments based on the proposed ShiftPixy stock buyback program.[6]

---

[6] It would appear that the only issue that is new to the MEFI motion is the reliance on the purported sale to ShiftPixy by one of its founders of a small amount of his ShiftPixy stockholdings, a transaction that is alleged to be a breach of a prohibition against such sales, but is not.  (*See* Absher Decl. ¶¶ 35-39.)

*Second*, these issues were actually litigated and decided in the related cases. Alpha's and Dominion's motions were hard fought by competent counsel. They were fully briefed and supported with extensive evidence. The parties submitted declarations of their principal officers. The Court clearly examined the parties' papers closely and issued two separate complete rulings addressing all the parties' arguments. Although both Alpha and Dominion could have chosen to appeal the Court's rejection of their applications immediately under 28 U.S.C. § 1292(a)(1) and § 1292(a)(2), they did not.

*Third*, both Alpha and Dominion had full and fair opportunities to litigate issues raised by their Rule 65 motions for preliminary injunctive relief that are now raised by MEFI and by this motion. Plaintiffs in both the Alpha Action and the Dominion Action chose to commence their cases, as did MEFI here, by not only filing a complaint against ShiftPixy but also bringing on Rule 65 motions by order to show cause. Both such plaintiffs filed extensive papers (declarations with the key transaction documents as exhibits and memoranda of law) in support of their Rule 65 motions (and ShiftPixy opposed those papers). The Court conducted hearings in both cases, and although it did not take evidence in those hearings, at least Dominion, but not Alpha, contended that it should (Dominion Action Dkt. # 21 at 6), and the Court apparently rejected that request.

*Fourth*, the Court's resolution of these issue was necessary to support a valid and final judgment on the merits in both cases. That is because in order to fully adjudicate the claims for injunctive relief in the Alpha and Dominion cases, whether preliminary or permanent, the Court must necessarily consider whether all of the elements that justify injunctive relief are present, particularly the *sine qua non* element of irreparable harm.

8

For all these reasons, the relief MEFI seeks here is barred by collateral estoppel.  Its motion should be denied on that basis alone.  But the weaknesses of its arguments do not end there.  We turn to their other defects.

## II.

### MEFI HAS FAILED TO SATISFY THE REQUISITES FOR A RECEIVERSHIP OR RESTRAINING ORDER

#### A.  Rule 66 Legal Standards.

"A receiver is an officer of the court who takes control or management of property that is the subject of a dispute for the purpose of preserving that property during the litigation." SINCLAIR ON FEDERAL CIVIL PRACTICE § 6:4 (5th ED. 2019).  Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver in accord with the "historical practice" of the federal courts.[7]  As one district court has summarized that practice:

> [a] federal court has the power in equity to appoint a receiver in order to protect a party's interest in property.  The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute.

*Varsames v. Palazzolo*, 96 F.Supp.2d 361, 366 (S.D.N.Y. 2000) (citing *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961 (receivership is a "drastic remedy" to be imposed "only where no lesser relief will be effective")).

---

[7]  Rule 66 states in full:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued.  But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule.  An action in which a receiver has been appointed may be dismissed only by court order.  Fed. R. Civ. P. 66.

If a district court has appointed a receiver or similar court-appointed officer, Rule 66 further directs that that person "administer[] the estate" in "accord with the historical practice in federal courts or with a local rule" adopted pursuant to Fed. R. Civ. P. 83.  Thus, administration must be consistent with "historical practice" or must be carried out under the terms of a local rule promulgated by the district courts in accordance with Rule 83.[8]

Finally, receivership is not a matter of right.  "A decision to appoint or not to appoint a receiver is committed to the sound discretion of the trial court."  *Id.* (*citing Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)).

Commentators too have noted that receivership is a drastic remedy, which should be granted only when it is of the utmost importance to protect someone's property interest. SINCLAIR ON FEDERAL CIVIL PRACTICE § 6:4.1, 6-19 (5th ED. 2019).  Some relevant factors to be

---

[8] Fed. R. Civ. P. 83, titled "Rules by District Courts; Judge's Directives," provides:
  (a) Local Rules.
  (1) In General. After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit. Copies of rules and amendments must, on their adoption, be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public.
  (2) Requirement of Form. A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a non-willful failure to comply.
  (b) Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

considered in ruling on such a motion are (1) fraudulent conduct on the part of the defendant, *Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208 (1927); (2) inadequacy of legal remedies, *Consol. Rail Corp. v. Fore River Ry.*, 861 F.2d 322 (1st Cir. 1988); (3) danger of the property being lost or injured before the end of the litigation, *Gordon v. Washington*, 295 U.S. 30 (1935); and (4) balancing the harm to the parties from the grant or denial of the receivership, *Consol. Rail Corp., supra.*[9]  One or more district courts have articulated other factors, such as whether the property is inadequate security for the outstanding debt, and the financial status of the debtor. *Miss Jones LLC v. Stiles*, No. 17-civ-1450-NSR (S.D.N.Y. Jul. 10, 2019), at *3 (citing *Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr. Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982).

But consideration of these factors does not aid MEFI.  As to the first factor, there is not even a hint, much less proof, of fraudulent conduct on the part of ShiftPixy.  As to the second, MEFI's clear and adequate remedy is in fact money damages.[10]  The third factor too cuts against MEFI—there is simply no danger of the assets of ShiftPixy (the property sought to be restrained or placed in receivership) will be "lost or injured" before the end of the litigation.  So too, the

---

[9] *See also D.B. Zwirn Special Opportunities Fund LP v. Tama Broadcasting Inc.*, 550 F.Supp.2d 481, 492 n.72 (S.D.N.Y. 2008); *Varsames*, 96 F.Supp.2d at 366.  The existence of "imminent danger" of the diminution of the value of the property at issue "is a critical factor in the analysis of whether to appoint a receiver."  *U.S. Bank National Ass'n v. Nesbitt Bellevue Property LLC*, 866 F.Supp.2d 247 (S.D.N.Y. 2012) (citing *Melnick v. Press*, No. 06-c Civ-. 6686, 2007 WL 2769490, at *1 (E.D.N.Y. Sept. 21, 2007 ("Plaintiffs are required to make a clear showing that the appointment is necessary to prevent irreparable injury.")).

[10] We need not repeat here the arguments set forth in our briefs in opposition to the separate motions for preliminary injunctions in the Alpha Action and the Dominion Action which fully address the adequacy of money damages and describe the measure of such damages for failure to honor conversion demands. (See Alpha Action, Dkt. # 7, Memorandum of Law of Defendant ShiftPixy, Inc. in Opposition to the Motion for a Preliminary Injunction of Plaintiff Alpha Capital Anstalt, at 10-12; Dominion Action, Dkt. # 14, Memorandum of Law of Defendant ShiftPixy, Inc. in Opposition to the Motion for a Preliminary Injunction of Plaintiff Dominion Capital LLC, at 11-12.)  It is even clearer in the instant case, where the principal relief sought *is* money damages for non-payment of the notes held by MEFI.

fourth factor militates against the relief MEFI seeks.  It is plain that harm to ShiftPixy's stakeholders—from its founders, to its stockholders, to its directors and officers, to its employees, to its client and their worksite employees—would far outweigh any harm to MEFI. (Absher Decl. ¶ 33.)  Finally, as to the last articulated factor, there simply is no "imminent danger" of the "diminution of the value of the property at issue" a consideration that is "a critical factor in the analysis of whether to appoint a receiver."  *U.S. Bank National Ass'n v. Nesbitt Bellevue Property LLC*, 866 F.Supp.2d 247 (S.D.N.Y. 2012.

### B.  Rule 65 Legal Standards.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995) (emphasis in original); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Hanson Tr. PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264 (2d Cir. 1986).  To obtain a preliminary injunction, a party must demonstrate "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor."  *Doninger v. Niehoff*, 527 F.3d 41 (2d Cir. 2008).  Whether an injunction is in the public interest, *Winter*, 555 U.S. at 20, must also be considered.  A prohibitory injunction, which MEFI seeks in the form of an order restraining ShiftPixy from using its assets during this litigation—seeks only to maintain the *status quo* pending a trial on the merits.  *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995).

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). "To satisfy the irreparable harm requirement, [movant] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation and citation omitted).

Accordingly, "a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quotation and citation omitted). Because of these well-established principles, "if a party fails to show irreparable harm, a court need not even address the remaining elements of the test." *Monowise Ltd. v. OZY Media, Inc*., No. 17-civ-8028 (S.D.N.Y. May 3, 2018), at *2 (citing and quoting *Roberts v. Atl. Recording Corp*., 892 F. Supp. 83, 88 (S.D.N.Y. 1995) ("Because a showing of irreparable harm is the single most important prerequisite for the issuance of injunctive relief, the Court need not address the remaining elements necessary to obtain such relief."); *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co*., No. 13-civ-7639-LTS, 2015 WL 1055933 (S.D.N.Y. Mar. 11, 2015) at *4 (same).

## C.  Legal Standards Applied to this Motion.

In the first instance, MEFI's motion wholly misconceives the purpose of receivership.  A receiver's charge is to *protect and preserve* property for the duration of a litigation.  A receiver is a fiduciary and an officer of the court entrusted to guard that property on behalf of the parties so

that it is not dissipated, or its value diminished, or is not otherwise placed beyond the reach of the litigant or creditor seeking the receivership during the course of that litigation.  But MEFI does not seek to *protect* anything, and in fact its intent and purpose is exactly the opposite— what it wants to do is to create so much pressure on ShiftPixy that ShiftPixy will throw its hands up and liquidate, to the damage and detriment of all its stakeholders, to satisfy indebtedness that pales into insignificance measured against the value that the management of ShiftPixy has created over the last four years.[11]

Disdaining to rely on any of the traditional and historic elements that justify equitable receiverships, the sole justification that MEFI advances is the contracts between it and ShiftPixy. Thus, MEFI would have the parties' contractual acknowledgements that MEFI could pursue a receiver control the Court's determination of whether MEFI has met the standards under Rule 66 and relevant case law.  But, while the case law does indicate that such a provision may be a "factor" in the Court's determination, it is neither binding on the Court nor controlling of the question presented (that is, whether a receiver should be appointed).[12]

For example, in *D.B. Zwirn Special Opportunities Fund LP v. Tama Broadcasting Inc*., the Court first acknowledged that, in the context of a mortgage, the Second Circuit had stated,

---

[11] ShiftPixy's FY 2019 gross profit of $13M translates (at 4x annualized gross profit) to an enterprise value of $52M.  Similarly, ShiftPixy's FY 2019 revenues, roughly $52M, translates (at 1x annualized revenues) to that same valuation. (Absher Decl. ¶¶11-13.)  ShiftPixy's management believes that these valuation factors are fair and reasonable in its industry.  (It is notable that ShiftPixy's current issued/outstanding shares, would put the share price at around $1.40 per share.  That valuation is just below the share price in March 2019, before the noteholders (supposedly acting independently) began their truly massive level of conversions; and it is roughly 50% lower than one year ago when they commenced their conversions and sale.)

[12]  In this sense, this factor is identical to the same factor under Rule 65.  And just as the Court is not bound by the parties' contract acknowledgement of irreparable harm, so too it is not bound here.  *See* Alpha Action Dkt. # 12 and Dominion Action Dkt. # 19.

"[i]t is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment." 550 F.Supp.2d at 22, fn.58 (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988. The court therefore held that the contractual provision in the financing agreements before it "is a factor that the Court considers in deciding whether appointment is warranted." *Id*. at 22. But the court went on to say that "[t]he mere existence of such contractual provision does not, however, dispose of the Court's inquiry in plaintiff's favor." *Id.* And it observed that courts still retain the "discretion to deny appointment of a receiver under appropriate circumstances even though the mortgage provides the mortgagee a specific right to an appointment." *Id*. The presence of such language in an appropriate case shifts the burden to defendant "of demonstrating why a receiver should not be appointed." *Id*. at 22-23.

## III.

## IF AN INJUNCTION OR RECEIVERSHIP ORDER ISSUES IT SHOULD BE CONDITIONED ON MEFI POSTING SUBSTANTIAL SECURITY

The rules applicable to both branches of MEFI's motion are plain in their requirement of security. Fed. R. Civ. P. 65(c) commands that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c). And under 28 U.S.C. § 754, such security is an absolute requirement where a receiver is appointed with respect to property in another district than the granting court. "A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, *upon giving bond as required by the court*, be vested

with complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754 (emphasis added). ShiftPixy's principal bank is Wells Fargo. Liquid assets such as cash are in the custody of Wells Fargo in California, ShiftPixy's principal place of business. Other assets that are the property of ShiftPixy, such as accounts receivable, tangible physical assets used in its business activities, intellectual property rights, etc. are likewise located where ShiftPixy is domiciled. Were the Court to grant its application, MEFI in its capacity as receiver would have to take actions within the Central District of California.

With respect to the branch of the motion seeking MEFI's appointment as a receiver, neither the relevant note (June 4, 2018 Note, Absher Decl., Attachment No. 1) nor the security agreement given in connection therewith contain any provision whatsoever relating to the giving of security (or bond). With respect to that branch of the motion seeking injunctive relief, section 9(g) of the note contains a purported waiver of the requirement of a bond or security. It may be expected that MEFI will point to that contract language as excusing the bond requirement. Presumably, notwithstanding the clear language of Rule 65(c), MEFI would contend that *no security* should be required conditioning the issuance of a preliminary injunction. It relies on Section 18 of the Notes, which acknowledges money damages may be inadequate to compensate a party for a breach, (*see* Absher Decl., Attachment 1) and on the discretion vested in this Court under Rule 65. But as with the contractual acknowledgement of irreparable harm, Section 18 cannot and does not bind this Court. Moreover, MEFI has given no reason why security should *not* be required.

Just as the Court is not bound by the parties' contractual acknowledgement of irreparable harm and inadequacy of money damages, so too it should not be bound by a waiver of the requirement of posting security. It would be absurd to argue that, while a movant "cannot rely

16

on [a] contract provision [acknowledging irreparable harm] alone to demonstrate irreparable harm," *Int'l Creative Mgmt., Inc. v. Abate*, No. 07-civ-1979-PKL (S.D.N.Y. Mar. 28, 2007), at *16, it may rely on such a provision to excuse the posting of security.  Just as the parties' contract acknowledgment does not bind the Court, it is plain that the movant seeking to be excused from posting security must independently prove it is entitled to that dispensation.  MEFI has not even attempted to negative the harm that might result from the grant of a receivership or an injunction.

And while the Court does have discretion to dispense with security under Rule 65(c) "where there has been no proof of likelihood of harm" to the party enjoined, *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2nd Cir. 1996), it has *no discretion* under Rule 66. Moreover, MEFI has failed to offer any scenario in which a wrongful injunction would not harm ShiftPixy.  In fact, ShiftPixy's refusal to continue to honor conversion demands was based on its continuing belief that the demands are the result of a plan and scheme that may violate the securities laws and may violate the Notes' terms or obligations, express or implied.  If an injunction were to be granted and the market price of ShiftPixy stock continue to decline as a result, that would further harm ShiftPixy's efforts to improve its long-term financial picture and its stock price.  The resulting harm, for example through inability to secure additional financing to meet the Company's objectives, is self-evident.

17

## CONCLUSION

MEFI's motion for a preliminary injunction and receivership should be in all respects

denied.

Dated: Cornwall-on-Hudson, New York
      November 13, 2019

                         Respectfully submitted,

                         KARLINSKY LLC

                         By: /s/ Martin E. Karlinsky
                                Martin E. Karlinsky, Esq.
                                Bonnie H. Walker, Esq.
                         103 Mountain Road
                         Cornwall-on-Hudson, New York 12520
                         (646) 437-1430
                         martin.karlinsky@karlinskyllc.com
                         bonnie.walker@karlinskyllc.com

                         Attorneys for Defendant

18