UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEF I, LP,

                          Plaintiff,                 Civil Action No.:

     - against -                             19-cv-8019-PGG

SHIFTPIXY, INC.

                          ShiftPixy.

REPLY MEMORANDUM OF LAW IN SUPPORT OF A PRELIMINARY
INJUNCTION AND THE APPOINTMENT OF A TEMPORARY RECEIVER

Law Office of Paul A. Rachmuth
265 Sunrise Highway, Ste. 62
Rockville Centre, NY  11570
(516) 330-0170

Counsel for MEF I, LP

# Table of Contents

Table of Authorities ............................................................................................................... iii

I.  SHIFTPIXY ADMITS THE ELEMENTS FOR THE RELIEF SOUGHT ........................1

   a.  ShiftPixy Admits that Valid Contracts Exist........................................................1

   b.  ShiftPixy Admits it Defaulted on the Notes.........................................................2

   c.  Other Defaults Under the Notes ...........................................................................2

   d.  Amounts Due Under the Notes ............................................................................3

II.  PRINCIPALS OF COLLATERAL ESTOPPEL ARE INAPPLICABLE TO THE
      PRESENT CASE ...............................................................................................................3

   a.  Different Issues Were Decided in the actions brought by Alpha Capital Anstalt and Dominion Capital LLC. .........................................................................4

   b.  The Issue was not Finally Decided in the Alpha and Dominion Cases ...............4

   c.  MEF is not a Party to Either the Alpha or Dominion Case and is not In Privity with Those Parties ..................................................................................5

   d.  There Have Been No Final Judgments on the Merits in Alpha and Dominion Cases ..........6

III.  APPOINTMENT OF A RECEIVER IS APPROPRIATE UNDER RULE 66 ...................6

   a.  The Poor Financial Health of ShiftPixy ...............................................................9

   b.  Balancing of Harms .............................................................................................8

IV.  PRELIMINARY INJUNCTION IS APPROPRIATE UNDER RULE 65 ........................9

V.  MEF SHOULD NOT BE REQUIRED TO POST A BOND ...........................................10

VI.  CONCLUSION ................................................................................................................10

## **Table of Authorities**

**Cases**

Abbott Laboratories v. Andrx Pharmaceuticals, Inc. 473 F.3d 1196 (Fed. Cir. 2007) ................... 4

Alpha Capital Anstalt v. Shiftpixy, Inc., 19-cv-6199 ..................................................................... 4

Boguslavsky v. Kaplan, 159 F.3d 715 (2d Cir.1998) ..................................................................... 4

D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., 550 F.Supp 2d 481
   (S.D.N.Y. 2008) ......................................................................................................................... 6

Dominion Capital LLC v. ShiftPixy, 19-cv-6704 ........................................................................... 4

Hougigant, Inc. v. Development Specialists, Inc. 299 F.Supp.2d 208 (S.D.N.Y. 2002) ................ 5

Marvel Characters, Inc. v. Simon, 301 F.3d 280 (2d Cir. 2002) .................................................... 4

U.S. Bank N.A. v. Crutch, 2010 U.S. Dist. LEXIS 75481 (E.D.N.Y. July 23, 2010) .................... 6

Williams & Sons Erectors v. South Carolina Steel Corp., 983 F. 2d 1176 (2d. Cir. 1993) ............ 5

**Statutes**

New York U.C.C. Section 9-609 ..................................................................................................... 9

The Plaintiff, MEF I, LP ("MEF") submits this Reply Memorandum of Law in further support of the relief sought in the Order to Show Cause entered by this Court on October 28, 2019 (the "Order to Show Cause") and in reply to the opposition papers filed by the Defendant, ShiftPixy, Inc. ("ShiftPixy").

## I. **SHIFTPIXY ADMITS THE ELEMENTS FOR THE RELIEF SOUGHT**

   a. <u>ShiftPixy Admits that Valid Contracts Exist</u>

Scott Absher, ShiftPixy's President and Chief Executive Officer, in his November 13, 2019 Declaration (the "Absher Dec."), admits ShiftPixy received full consideration for the June and December Notes. (Absher Dec. at ¶19). Mr. Absher also admits that ShiftPixy entered into the Securities Purchase Agreement. (see Absher Dec. at ¶37 citing to the terms of the Securities Purchase Agreement.) Absher also does not contest that ShiftPixy is a party to and bound by the terms of the Security Agreement or that MEF holds a validly perfected security interest in all of ShiftPixy's assets by virtue of the filed UCC financing statements.

And while Mr. Absher characterizes the Notes as "toxic" (ostensibly because of an incorrect assertion that the Notes may be converted at the holders discretion into equity in ShiftPixy based on the stock price when converted, rather than at a fixed price), he fails to mention that, pursuant to the Notes' terms, ShiftPixy always had the right to make amortization payments in cash instead of in stock. ShiftPixy, however, chose to exercise its option to make amortization payments in stock. (See Declaration of Ari Morris at ¶¶3-5, the "Morris Dec."). Further, ShiftPixy does not contest that pursuant to Section 7 of the Security Agreement, upon the occurrence of any event of default, ShiftPixy is obligated to hold in trust for MEF any revenue, income, dividend, interest or other sums subject to plaintiff's security interests and pay such sums over to MEF.

b. ShiftPixy Admits it Defaulted on the Notes

Mr. Absher admits that ShiftPixy intentionally defaulted on the Notes.

"… ShiftPixy decided to force a default under the Notes. It ceased to honor conversion demands issued by the noteholders, and it later ceased making repayments of principal and payment of interest.

(Absher Dec. at ¶22). Absher explained that ShiftPixy's choice to force the default on the Notes was made because of the deteriorating health of ShiftPixy (i.e. "… the collapse of its share price and the consequent difficulty in locating additional investment[s]…") (Id.).

c. Other Defaults Under the Notes

By its terms, the June Note became fully due and payable on September 4, 2019. As Mr. Absher has admitted not making payments due under the June Note and admits that amounts are still due and owing under it, there can be no question that ShiftPixy is in monetary default under the June Note for failing to pay all amounts outstanding when the Note matured.

Mr. Absher is incorrect in stating that Stephen Holmes's breach of the Lockup Agreement is not a default under the Notes. Mr. Absher's argument is premised on the incorrect assertion that the Lockup Agreement is not a "Transaction Document" as such term is defined Section 1.1 of the Securities Purchase Agreement dated June 4, 2018 (a copy of which is annexed to the Morris Dec. as Exhibit B). In the Securities Purchase Agreement, "Transaction Document" is defined to include "this Agreement, the Notes, the Warrants, the *Lock-up*, the Registration Rights Agreement…" (emphasis added). "Lock-up" is defined to include the Mr. Holmes's Lockup Agreement. The securities purchase agreement attached to the Absher Dec. is dated March 11, 2019 and MEF is not a party to that agreement (See Absher Dec. Exhibit C). Accordingly, there can be no question

regarding whether the Lockup Agreement is a Transaction Document and the breach of which constitutes a default under the Notes.[1]

### d. Amounts Due Under the Notes

Mr. Absher admits that, based on ShiftPixy's own calculations, it owes MEF "roughly $1 million". (Absher Dec. at ¶23). While this amount is incorrect, it certainly is sufficient to trigger the contractual relief provisions under the Notes. In fact, as set forth in the Morris Dec. the amount due under the Notes, including default amounts, is $1,961,074.16. (Morris Dec. ¶11).

As stated in the Morris Dec., if ShiftPixy is willing to pay the amount it claims is due – $1 million – then MEF will withdraw its requests for a restraining order and the appointment of a received and the parties could proceed with the litigation on the sole issue of the remaining amounts owed under the Notes, if any (Morris Dec. at ¶12).

## II. PRINCIPALS OF COLLATERAL ESTOPPEL ARE INAPPLICABLE TO THE PRESENT CASE

ShiftPixy incorrectly argues that this Court's preliminary rulings in cases unrelated to MEF and in which MEF is not a party should preclude Plaintiff's instant action.

The Second Circuit Court of Appeals holds that collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 301 F.3d 280, 288-89 (2d Cir. 2002) citing *Boguslavsky v.*

---

[1] Mr. Absher is also incorrect in arguing that ShiftPixy did not cause a default when it created a stock buy-back program, because ShiftPixy has not purchased shares under the program (Absher Dec. at ¶31). This statement is incorrect because under Section 7(e) of the Notes, ShiftPixy's offer to repurchase its stock constitutes a default, whether or not it completes the purchase.

*Kaplan*, 159 F.3d 715, 720 (2d Cir.1998). Here, the elements considered by the Second Circuit do not support a determination of collateral estoppel.

    a. <u>Different Issues Were Decided in the actions brought by Alpha Capital Anstalt and Dominion Capital LLC.</u>

A review of the dockets in actions *Dominion Capital LLC v. ShiftPixy*, 19-cv-6704 (the "Dominion Case") and *Alpha Capital Anstalt v. Shiftpixy, Inc.*, 19-cv-6199 (the "Alpha Case") shows that in both cases MEFs seek to (i) direct ShiftPixy to honor stock conversion notices and (ii) enjoin ShiftPixy from proceeding with its stock buyback program. And in each case, MEF moved for a preliminary injunction for the requested relief. In each case, it appears that this Court did not address, let alone finally rule upon, the relief sought here;  enjoining ShiftPixy from disbursing funds that are the subject of Plaintiff's properly perfected UCC Financing Statement and appointing a receiver pursuant to the terms of the Notes.

    b. <u>The Issue was not Finally Decided in the Alpha and Dominion Cases</u>

As explained by the Federal Circuit Court of Appeals, determinations in preliminary injunction hearings can only be used for collateral estoppel purposes in subsequent proceedings when the first court had reached a final determination on the issue in question. See *Abbott Laboratories v. Andrx Pharmaceuticals, Inc*. 473 F.3d 1196, 1203 (Fed. Cir. 2007).  Here, it appears that no final determination has been reached in either the Alpha or Dominion Cases. Rather this Court, denied the preliminary injunction requests without a written opinion and instructed the parties to move forward with their litigation; thereby allowing for a final determination on those issues in the future.  Thus, as no final determination has been reached in the Alpha and Dominion Cases, determinations made in conjunction with the preliminary injunction requests do not have collateral estoppel effect in this case.

  c. <u>MEF is not a Party to Either the Alpha or Dominion Case and is not In Privity with Those Parties</u>

ShiftPixy concedes that MEF was never made a party to the Alpha or Dominion Cases and there is no privity between MEF and either Alpha or Dominion.  Nonetheless, ShiftPixy argues that because MEF, Alpha and Dominion each are purchasers of certain of ShiftPixy's securities and conducted their affairs in the same manner, privity should be inferred.  ShiftPixy also argues that privity should be inferred. because under the Security Agreement, MEF may act as agent for other investors, including Alpha and Dominion.  ShiftPixy is incorrect.

The cases cited by ShiftPixy for this proposition describe situations where privity is used by a party to assert a right to sue another party for negligent actions under a theory of contract law. See *Williams & Sons Erectors v. South Carolina Steel Corp*., 983 F. 2d 1176, 1178 (2d. Cir. 1993) (contractor arguing it was in near-privity with an architect that drafted allegedly faulty plans); liable based on  *Hougigant, Inc. v. Development Specialists, Inc.* 299 F.Supp.2d 208, 212 (S.D.N.Y. 2002) (plaintiff arguing it was in near-privity with ShiftPixy for taking control of its intellectual property).  Here, no such situation exists.  Rather, Alpha and Dominion are under no obligation to act on MEF's behalf, by contract or otherwise and neither Alpha nor Dominion purported to act on Plaintiff's behalf.  Likewise, MEF is not under a contractual obligation to act on Alpha or Dominion's behalf and is not acting on Alpha or Dominion's behalf.  (That MEF could, under certain circumstances, take actions as agents for other investors under the Security Agreement is irrelevant here as it is not doing so.)

  d. <u>There Have Been No Final Judgments on the Merits in Alpha and Dominion Cases.</u>

While ShiftPixy must prove that "the resolution of the issue was necessary to support a valid and final judgment on the merits", here no final judgment on the merits has been made.

Rather, as described above, the court has declined to grant Alpha and Dominion preliminary relief in their requests to (i) direct ShiftPixy to honor stock conversion notices and (ii) enjoin ShiftPixy from proceeding with its stock buyback program. Whether or not the Court determined there would be irreparable harm to Alpha or Dominion if it failed to take the requested action does not constitute a final determination on the merits in those cases. It also should not have a bearing on whether ShiftPixy should be enjoined from disbursing funds that are the subject of Plaintiff's properly perfected UCC Financing Statement and whether the Court should appoint a receiver pursuant to the terms of the Notes.

### III. APPOINTMENT OF A RECEIVER IS APPROPRIATE UNDER RULE 66

ShiftPixy concedes that where MEF and ShiftPixy are parties to an agreement and that agreement calls for the appointment of a receiver, the burden is on ShiftPixy to demonstrate why a receiver should not be appointed. *See* D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., 550 F.Supp 2d 481, 491 (S.D.N.Y. 2008); *see also* U.S. Bank N.A. v. Crutch, 2010 U.S. Dist. LEXIS 75481 *13 (E.D.N.Y. July 23, 2010). However, here ShiftPixy makes no such showing. Instead, it points to its supposed financial health and argues that it would be harmed if a receiver is appointed.

a. The Poor Financial Health of ShiftPixy

ShiftPixy argues that it is financially sound and is not at risk of collapse. This argument, however, is belied by the very facts it puts forth. ███████████████████████████████████████████████████████████████████████. ███████████████████████████████████████████ A review of ShiftPixy's most recently filed financial statement, the quarterly financial statement for period ended May 31, 2019, shows an even more dismal picture. In it, the Debtor reveals that its total

current assets are approximately $13.2 million and current liabilities are $22.2 million, equating to Working Capital deficit of $9 million. (Morris Dec. ¶7).

A review of ShiftPixy's stock shows just as dismal of a picture. Mr. Absher notes that ShiftPixy's stock has lost 95% of its value over the past year and a half, going from a high of $4.62 per share to a current price of $0.26 per share. (Absher Dec. at ¶21). Mr. Absher also notes that the Debtor received notice from NASDAQ that it will be delisted because its stock price had fallen below $1.00 per share (Absher Dec. at ¶29).

The reason for his company's plummeting stock price is due to its financial condition, not short selling. MEF has never participated in short selling of ShiftPixy's stock. Rather, a review of its stock price declines shows that the stock price declined 28% the day after it released its 3rd quarter 2018 financials (7/13/2018) the stock declined 28%. The day it released its 4th quarter 2018 financials (11/28/2018) the stock declined 28%. (Morris Dec. ¶6). The following three quarters, the stock declined 10% on average the day following each earnings release.

While Mr. Absher muses that there is no reason for the stock price decline when the company reported good operating results (Id.), it is reasonable to assume that the public market does not see it the same way. Instead, it is reasonable to see ▮▮▮▮▮▮▮▮ in losses for the past two years, a Working Capital deficit of $9 million and a possible delisting of the stock from NASDAQ as signs of major financial trouble. (Morris Dec. ¶7-8). It is also reasonable to assume that the public market looks skeptically on a company that intentionally defaults on $10 million in note issuances and cannot locate additional investors to help it dig itself out of its financial hole. (see Absher Dec. at ¶22).

Given ShiftPixy's continued losses, severe Working Capital deficit declined stock price, inability to attract additional financing and possible delisting from NASDAQ, MEF is reasonable to fear that the Debtor will not be solvent and able to repay the Notes at the end of this Litigation.

      b.   <u>Balancing of Harms</u>

ShiftPixy argues that in determining whether a receiver should be appointed, the Court should balance the relative harms each side would suffer if the receiver is or is not appointed. While Plaintiff argues that ShiftPixy must first overcome the presumption of appointing the receiver before a balancing test is performed, in such a test, MEF would succeed.

ShiftPixy admits that it received consideration for the Notes and voluntarily entered into the $10 million financing facility with investors, including MEF. ShiftPixy also concedes that as part of the financing agreements, it granted MEF a security interest in all of its assets and agreed to the appointment of a receiver in the event of a default. ShiftPixy now admits that it has forced a default under the Notes and has stopped paying on the Notes, even though there is at least $1 million outstanding on the Notes. If this Court were to balance the equities in a case where the appointment of a receiver was agreed to by the parties, it would see that granting a receiver would put the parties exactly in the position they bargained for, while denying the appointment of a receiver would expose MEF to a loss if ShiftPixy is not able to repay the Notes at the end of the litigation.

Further, the appointment of a receiver would not destroy the Debtor's business as it alleges.[2] Rather, the receiver would operate the business only until the debt to MEF was repaid.

---

[2] ShiftPixy has argued that if a receiver is appointed, it should not be MEF because the Securities Exchange Commission has filed an action against Joshua Sason, the manager of the general partner of MEF. As stated in the Morris Dec., the action against Mr. Sason is unrelated to this case. However, another partner of MEF that is unrelated to Mr. Sason and his companies

The receivership would then be terminated. It seems, therefore, that ShiftPixy is stating that if it is forced to live up to its contractual obligations and pay MEF, its business will fail. Again, that is a reason to provide MEF with the relief it seeks, not deny the relief.

## IV.     PRELIMINARY INJUNCTION IS APPROPRIATE UNDER RULE 65

Section 18 of the Notes contain acknowledgments by ShiftPixy that in the event of a breach, MEF is entitled to injunctive relief because it will suffer irreparable harm which money damages may be inadequate to compensate. ShiftPixy is now asking this Court to ignore this contract provision and, instead determine what the parties have already agreed upon: the irreparable harm to MEF and its likelihood of success on the merits. Even if the Court were to undertake such an analysis, it should find in favor of MEF.

The Uniform Commercial Code, as adopted by New York Section 9-609 states that a secured creditor may take possession of collateral upon the default of the debtor. Here, ShiftPixy does not refute that MEF holds a validly perfected security interest in all the assets of ShiftPixy. It also admits that it has defaulted on the Notes. Accordingly, pursuant to the NY UCC, MEF is entitled to possession of ShiftPixy's assets up to the amount of the debt.

As demonstrated above, it is likely that MEF will suffer irreparable harm if the injunction is not granted, as the financial health of ShiftPixy is such that there can be no assurance it will be able to repay the Notes at the end of this litigation. Further, ShiftPixy admits to owing MEF $1 million. Accordingly, it cannot now argue MEF will not be successful in the litigation. Accordingly, grounds exist for granting the preliminary injunction.

---

could just as easily and effectively serve as the receiver.

V. **MEF SHOULD NOT BE REQUIRED TO POST A BOND**

As ShiftPixy points out, Section 9(g) of the Notes contain waivers of the requirement for MEF to post a bond or security.  Once again, ShiftPixy is asking the Court to ignore the clear terms of the Parties' agreement.  As MEF is willing to limit the amount it receives by the appointment of a receiver to the amount admitted by ShiftPixy concedes is owed $1 million (with the balance to be addressed in this litigation), then no undue hardship could befall ShiftPixy and no bond is appropriate.

VI. **CONCLUSION**

ShiftPixy has admitted it has defaulted on the Notes and that it owes MEF at least $1 million.  The Court should not re-write the Parties' agreement and remove the agreed-upon remedies of the appointment of a receiver and/or the imposition of an injunction to prevent the dissipation of assets that secure the debt.  Accordingly, the Court should grant the relief sought by MEF.

Dated: Rockville Centre, New York
       November 18, 2019

                Respectfully submitted,

                Law Office of Paul A. Rachmuth

                By:   /s/ Paul A. Rachmuth
                         Paul A. Rachmuth (pr-1566)
                265 Sunrise Highway, Ste. 62
                Rockville Centre, NY  11570
                (516) 330-0170

                *Counsel for MEF I, LP*