UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEF I, LP,

                Plaintiff,

- against -

SHIFTPIXY, INC.

                Defendant.

Civil Action No.:

19-cv-8019-PGG

DECLARATION OF ARI MORRIS IN SUPPORT OF A
PRELIMINARY INJUNCTION AND THE APPOINTMENT OF A RECEIVER

ARI MORRIS hereby declares under penalty of perjury under the laws of the United States of America:

1.    I am the Portfolio Manager of MEF I, LP ("MEF"), the plaintiff in the above captioned action, and am personally familiar with the facts set forth herein.

2.    I make this declaration in support of plaintiff's application for an order: (a) pursuant to Fed. R. Civ. Proc. 65, enjoining defendant ShiftPixy, Inc. from using, selling, transferring or disposing of any of the Collateral, or any part thereof, as defined in that certain written Security Agreement dated June 4, 2018, executed and delivered by defendant to plaintiff; and (b) pursuant to Fed. R. Civ. Proc. 66, appointing plaintiff as receiver to exercise all of the remedies and rights conferred upon it by written agreement between the parties under that Security Agreement dated June 4, 2018, including but not limited to the right to take possession of the Collateral as defined in said agreement, including but not limited to any and all revenue, income, dividend, interest,

check, draft, note, trade acceptance or other instrument evidencing an obligation to pay any such sum to defendant.

### A. THE STRUCTURE OF THE NOTES AND THEIR CONVERSION FEATURES

3. The Defendant, ShiftPixy, Inc. ("ShiftPixy") mischaracterizes the June and December notes. Contrary to its assertions, MEF could not convert the entire amounts due on the Notes to common shares at a discount to the market price. Rather, the Notes had two separate conversion features.

4. The first conversion feature (Section 4 of the Notes, a "Conversion") allowed MEF to convert the stock at a fixed price: $2.49/share (the stock price on June 5, 2018). Each Conversion reduced the outstanding principal of the Notes. From the date of its investment until today, MEF executed one Conversion, which occurred in November 2018 for 106,203 shares. MEF received the shares on November 29, 2018, on which day the closing price for ShiftPixy's stock was 2.99/share. Accordingly, the Conversion allowed ShiftPixy to retire roughly $250,000 of Note principal.

5. The second conversion feature (Section 2(e) of the Notes, an "Amortization") allows ShiftPixy to elect to pay the regularly scheduled amortization payments in stock rather than in cash. Amortizations convert at a 15% discount (based on the stock's volume weighted average price). ShiftPixy elected to pay Amortizations in stock a majority of the time, presumably because it was unable or unwilling to pay cash for the Amortizations. MEF was given the option to have three amortization payments made in stock. It elected this option for one half of one amortization payment.

B.  **THE FINANCIAL CONDITION OF SHIFTPIXY**

6. Contrary to the statements by Scott Absher, the reason for his company's plummeting stock price is due to its financial condition, not short selling.  MEF has never participated in short selling of ShiftPixy's stock.  Rather, a review of its stock price declines shows that the stock price declined 28% the day after it released its 3rd quarter 2018 financials.  The day after it released its 4th quarter 2018 financials, the stock declined 33%. The following three quarters, the stock declined 10% on average the day following each earnings release.

7. MEF last held shares of ShiftPixy's stock on April 17, 2019.  Since then, the stock price has declined from $1.03 to a current price of $0.26, further evidence that MEF has had no material negative impact on the company's stock.

8. ShiftPixy's financial health continues to be shaky at best.  A review of its most recently filed financial statement for the period ended May 31, 2019, shows a dismal picture.  In it, ShiftPixy reveals that its total current assets are approximately $13.2 million and current liabilities are $22.2 million, equating to Working Capital deficit of $9 million (Working Capital is defined as a company's current assets less its current liabilities).  Couple this Working Capital deficit with the ▮▮▮▮▮ in losses the company experienced over the past two years described by Mr. Absher, it shows a financially unsound company that is at risk of collapse.  This risk is exacerbated by the ShiftPixy's receipt of the notice from NASDAQ that it will be delisted because it no longer meets the listing requirements.

9. Given ShiftPixy's continued losses, severe Working Capital deficit, declined stock price, inability to attract additional financing and possible delisting from NASDAQ, MEF fears that ShiftPixy will not be solvent and able to repay the Notes at the end of this litigation.

C.  **AMOUNTS DUE UNDER THE NOTE**

10. All parties agree that ShiftPixy is in default under the Notes; accordingly the amount owed is calculated based on the "Mandatory Default Amount" as defined in Section 1 of the Notes.

11. Mr. Absher states that ShiftPixy believes admits that, based on the Defendant's own calculations, it owes the Plaintiff "roughly $1 million." This amount appears to be based on an incorrect application of the Mandatory Default Amount, which can be calculated in two ways, with the higher number being the amount owed. (See Notes Section 8(b)).

12. Attached hereto as Exhibit "A" is a calculation of the amounts due under the two Notes using both methods of calculation in the Mandatory Default Amount. Based on this calculation, the total amount due under the Notes as of August 15, 2019 is $1,961,074.16. If ShiftPixy is willing to pay MEF the amount that ShiftPixy itself claims is due – $1 million – then MEF will withdraw its requests for a restraining order and the appointment of a received and the parties could proceed with the litigation on the sole issue of the remaining amounts owed under the Notes, if any.

D.  **THE LOCKUP AGREEMENT**

13. Mr. Absher's is incorrect in stating that Stephen Holmes's breach of the Lockup Agreement is not a default under the Notes. Mr. Absher's argument is premised on the incorrect assertion that the Lockup Agreement is not a "Transaction Document" as such term is defined Section 1.1 of the Securities Purchase Agreement dated June 4, 2018, a copy of which is annexed hereto as Exhibit "B". In the Securities Purchase Agreement, "Transaction Document" is defined to include "this Agreement, the Notes, the Warrants, the ***Lock-up***, the Registration Rights

Agreement…" (emphasis added). "Lock-up" is defined to include the Mr. Holmes's Lockup Agreement. The securities purchase agreement attached to the Absher Dec. is dated March 11, 2019 and MEF is not a party to that agreement (See Absher Dec. Exhibit C).

14. The Lockup Agreement was delivered by ShiftPixy in connection with the Securities Purchase Agreement. MEF specifically relied upon it as a condition for the financing, as we did not want ShiftPixy's insiders divesting themselves from their company while our investment was in place.

### E. **APPOINTMENT OF A RECEIVER**

15. ShiftPixy has argued that if a receiver is appointed, it should not be MEF because the Securities Exchange Commission has filed an action against Joshua Sason, the manager of the general partner of the MEF. The action against Mr. Sason is unrelated to this case. However, myself or another partner of MEF who is unrelated to Mr. Sason and his companies could just as easily and effectively serve as the receiver.

Dated: New York, New York
November 18, 2019

_____
Ari Morris